UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXIS SLATEN,<br><br>      Plaintiff,<br><br>   v.<br><br>CHRISTIAN DIOR, INC.,<br><br>      Defendant. | Case No. 23-cv-00409-JSC<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 23 |

Plaintiff alleges Defendant misleadingly advertises the sun protection factor ("SPF") benefits of its cosmetic products. (Dkt. No. 1.)[1] Before the Court is Defendant's motion to dismiss. (Dkt. No. 23.) After carefully considering the briefing, and with the benefit of oral argument on May 11, 2023, the Court GRANTS the motion in part and DENIES it in part.

**COMPLAINT ALLEGATIONS**

Plaintiff, a California resident, has purchased Defendant's Dior Forever Foundation from a Macy's retail store in Daly City, California for several years. (Dkt. No. 1 ¶ 51.) She read and relied on the front of the Dior Forever Foundation box, which states:

> TRANSFER-PROOF – 24H FOUNDATION
> HIGH PERFECTION
> CONCENTRATED FLORAL SKINCARE
> WITH SUNSCREEN
>
> BROAD SPECTRUM SPF 15

(*Id.* ¶ 21.) She believed the product would provide both cosmetic coverage and SPF protection for 24 hours. (*Id.* ¶¶ 22, 52.) The back of the product bottle (inside the box) also states:

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

>24H WEAR HIGH PERFECTION
>SKIN-CARING FOUNDATION
>WITH SUNSCREEN
>
>LASTING COMFORT AND CARE
>
>BROAD SPECTRUM SPF 35

(*Id.* ¶ 37.) It is not clear whether the product is offered in multiple SPF options, given that the complaint quotes both SPF 15 and 35. (*See id.* ¶¶ 22, 52.)

However, the product's SPF protection lasts for two hours at most. (*Id.* ¶ 23.) The drug facts panel on the back of the product box directs consumers to "reapply at least every 2 hours." (*Id.* ¶ 37.) Plaintiff would not have purchased, or would have paid less for, the product had she known Defendant's labeling was deceptive and misleading. (*Id.* ¶¶ 54–55.) Plaintiff asserts if "the Products were reformulated and/or relabeled without the misleading 24 hour SPF claims, [she] would likely purchase the Products again in the future." (*Id.* ¶ 56.) Plaintiff also challenges the labels on the Dior Forever Skin Glow Foundation product and any other on which Defendant "make[s] an SPF claim and a claim that the Products will last longer than two hours." (*Id.* ¶ 20.)

Plaintiff asserts the product labels are misleading because a reasonable consumer will think they mean the products provide all benefits—including cosmetic coverage and SPF protection—for 24 hours without the need to reapply. (*Id.* ¶ 22.) On behalf of a putative nationwide class and California subclass who bought the products, Plaintiff brings claims for: (1) violation of California's Consumer Legal Remedies Act ("CLRA"); (2) violation of California's False Advertising Law ("FAL"); (3) fraud, deceit, and/or misrepresentation; (4) violation of all three prongs (unlawful, unfair, and fraudulent) of California's Unfair Competition Law ("UCL"); and (5) unjust enrichment. (*Id.* ¶¶ 57, 66–111.) Plaintiff disclaims any causes of action under the Federal Food, Drug, and Cosmetic Act ("FDCA") and regulations promulgated by the Food and Drug Administration ("FDA"). (*Id.* ¶ 65.) Accordingly, she relies on the FDCA and FDA regulations only to the extent they are also enacted under California state law or regulation, or provide a predicate for liability under state law. (*See id.*)

//

//

# DISCUSSION

## I. EXPRESS PREEMPTION

Defendant argues the FDCA expressly preempts Plaintiff's state claims. "FDCA preemption, like all federal preemption, is an affirmative defense. Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 603 n.8 (9th Cir. 2018) (cleaned up). In analyzing express preemption,

> our focus is on the plain meaning of [the statute]. That's because the plain wording of the clause necessarily contains the best evidence of Congress' preemptive intent. In discerning its meaning, we look to [the statute's] text, structure, and context. And we apply this textual analysis without any presumptive thumb on the scale for or against preemption.

*Cal. Rest. Ass'n v. City of Berkeley*, 65 F.4th 1045, 1050 (9th Cir. 2023) (cleaned up).

The FDCA's preemption clause says,

> [N]o State or political subdivision of a State may establish or continue in effect any requirement—
>
> (1) that relates to the regulation of a drug that is not subject to the requirements of section 353(b)(1) [related to prescription drugs] or 353(f)(1)(A) [related to veterinary prescription drugs] of this title; and
>
> (2) that is different from or in addition to, or that is otherwise not identical with, a requirement under this chapter . . . .

21 U.S.C. § 379r(a). The statute regulates sunscreen as a drug. Among other requirements, sunscreen products must include a drug facts label stating, "reapply at least every 2 hours." 21 C.F.R. § 201.327(e)(4). Sunscreen products and other drugs "shall be deemed to be misbranded" if their "labeling is false or misleading in any particular." 21 U.S.C. § 352(a)(1). In particular,

> There are claims that would be false and/or misleading on sunscreen products. These claims include but are not limited to the following: "Sunblock," "sweatproof," and "waterproof." These or similar claims will cause the product to be misbranded under [21 U.S.C. § 352].

21 C.F.R. § 201.327(g).

There are two alternative reasons the FDCA does not preempt Plaintiff's claims. First, Plaintiff's claims do not implicate any FDCA "requirement" for a sunscreen product. 21 U.S.C. §

3

379r(a)(2). The FDCA does not require the front of Defendant's sunscreen package, also known as the "principal display panel," 21 C.F.R. § 201.60, to say "24H" or anything else about how long it lasts. There is no FDCA requirement "on point," so no preemption. *Hollins v. Walmart Inc.*, No. 21-56031, 2023 WL 3364616, at *8 (9th Cir. May 11, 2023). For example, in *Durnford*, 907 F.3d at 603, the label misleadingly suggested the product's protein came from certain ingredients. That claim was not preempted because FDA regulations set out a protocol to test protein content, but not protein composition. *Id.* at 603–05; *see Hollins*, 2023 WL 3364616, at *8. And in *Astiana v. Hain Celestial Grp., Inc.*, the products were labeled "All Natural" or "Pure Natural," which was not required by FDA regulations. 783 F.3d 753, 758 (9th Cir. 2015). A claim requiring the defendant "to remove these allegedly misleading advertising statements" did not "run afoul of the FDCA" because it would not "modify or enhance any aspect of [the] cosmetics labels that are required by federal law." *Id.*; *see Meza*, 2023 WL 3082346, at *5 ("Put another way, a claim will not be expressly preempted under the FDCA if defendant's labeling duties would remain the same if plaintiffs prevailed."). Similarly here, FDA regulations require sunscreen labels to include several pieces of information, but none on point. *See Meza*, 2023 WL 3082346, at *6 ("Plaintiff alleges . . . the '24/25 HR' claims misleadingly suggest the Products will provide sun protection for that amount of time when in fact they only provide two hours of protection. As in *Astiana*, FDA regulations do not mandate that sunscreen manufacturers include claims pertaining to the product's durational capability. Instead, the regulations state that non-water-resistant products include 'reapply at least every 2 hours.' As such, Plaintiff's claims that the durational statements violate state law would not lead to any additional or different requirements to the existing regulations." (cleaned up)).

Alternatively, to the extent Plaintiff's claims impose a requirement on a sunscreen product, it is "identical to" the FDCA's requirement that sunscreen labels not be false or misleading. 21 U.S.C. § 379r(a)(2); *see id.* § 352(a)(1). As the Ninth Circuit explained in *Ebner v. Fresh, Inc.*:

> [B]oth the federal FDCA and California's Sherman Law prohibit the false or misleading labeling of a cosmetic. Viewed in this light, Plaintiff is not asking Fresh to modify or enhance any aspect of its cosmetics labels that are required by federal law. Rather, the state-law duty that Plaintiff seeks to enforce under the Sherman Law is

4

>identical to Fresh's federal duty under the FDCA: the duty to avoid false or misleading labeling.

838 F.3d 958, 965 (9th Cir. 2016) (cleaned up). Because the FDCA prohibits false or misleading labeling, it does not preempt California's laws allowing consumers to sue manufacturers who violate the federal prohibition on false or misleading labeling. "Simply put, the availability of state law damages for violations of federal law does not amount to an additional or different requirement." *Astiana*, 783 F.3d at 757 (cleaned up). Defendant has not identified any part of the FDCA suggesting "24H" is not false or misleading as a matter of law. *Cf. Roffman v. Perfect Bar, LLC*, No. 22-CV-02479-JSC, 2022 WL 4021714, at *8 (N.D. Cal. Sept. 2, 2022) ("FDA regulations allow the nitrogen method for front-label protein claims . . . . That the regulations simultaneously prohibit 'misleading' labeling, shows that nitrogen-method protein claims are not inherently misleading under the FDA regulations." (cleaned up)).

Defendant insists the FDA considered regulating cosmetic duration claims in products with sunscreen but decided not to, and therefore Plaintiff's claims are preempted. (Dkt. No. 33 at 15–16.) Not so. Defendant's characterization of what the FDA considered is wrong. Several commenters on FDA-proposed sunscreen regulations argued that different drug facts labeling (what is on the back of the product) should apply to cosmetics with sunscreen. The FDA concluded cosmetics with sunscreen should have the same drug facts as non-cosmetic sunscreen. It then explained:

>To help consumers understand that the sunscreen directions apply to the use of the product as a drug, for sun protection, we are allowing the optional statement "for sunscreen use:" to appear as the first line under "Directions." Consumers who are using these products primarily for cosmetic use will be more likely to understand that they might not receive the intended sun protection if they do not follow the directions in the Drug Facts label.

76 Fed. Reg. 35,639 (June 17, 2011). This conclusion says nothing about duration claims on the front label, and it also does not suggest that consumers will not be confused by a duration claim on the front label.

Accordingly, Plaintiff's claims are not preempted. Defendant's motion to dismiss on this basis is DENIED.

5

## II. FALSE OR MISLEADING UNDER CLRA, FAL, & UCL

Plaintiff asserts Defendant violated the CLRA by misrepresenting the products' "source, sponsorship, approval, or certification"; representing they have "sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"; representing they "are of a particular standard, quality, or grade" but are of another; and "[d]isparaging the goods . . . of another by false or misleading representation of fact." Cal. Civ. Code §§ 1770(a)(2), (5), (7), (8). She also asserts Defendant's labels are "untrue or misleading" under the FAL and "unfair" and "fraudulent" under the UCL. Cal. Bus. & Prof. Code §§ 17500, 17200. All of these claims are governed by the "reasonable consumer" test, under which Plaintiff must adequately allege "members of the public are likely to be deceived." *Ebner*, 838 F.3d at 965 ("This requires . . . a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." (cleaned up)); *see also Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) ("This requires more than a mere possibility that [the] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." (cleaned up)).

Plaintiff must also meet Rule 9(b)'s heightened pleading requirement for claims "grounded in" fraud. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (explaining that if a claim relies on an alleged "unified course of fraudulent conduct," Rule 9(b) applies even if fraud is not a necessary element of the claim); *see, e.g.*, *Loh v. Future Motion, Inc.*, No. 5:21-CV-06088-EJD, 2022 WL 2668380, at *5 (N.D. Cal. July 11, 2022) ("Plaintiffs' theory that Defendant harmed its customers by fraudulently representing the safety and craftsmanship of the Onewheel underlies each claim."). Plaintiff's claims are grounded in fraud because they assert Defendant's "24H" marketing statement is false. Thus, for each claim she must allege "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (cleaned up).

Plaintiff plausibly alleges the product labels are false or misleading and reasonable consumers are likely to be misled. She alleges facts supporting a reasonable inference that consumers increasingly care about sun protection, which supports an inference they may choose

1    Defendant's products believing that its SPF benefits will last for "24H." *See Bell Atl. Corp. v.*
2    *Twombly*, 550 U.S. 544, 570 (2007).  Plaintiff also meets Rule 9(b)'s requirement to plead "*why*
3    the [statements are] false," *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 n.2 (9th Cir.
4    2018): because the SPF protection lasts only two hours.

5          Defendant argues the "24H" promise applies only to the product's cosmetic benefits, but,
6    drawing all inferences in Plaintiff's favor, reasonable consumers could think otherwise.  *See Bell*
7    *v. Publix Super Markets, Inc.*, 982 F.3d 468, 476–77 (7th Cir. 2020) ("With the time afforded by
8    litigation, we can see how '100% Grated Parmesan Cheese' might be interpreted as claiming only
9    that whatever it contains is '100% grated' . . . .  Another reading, though, and certainly a plausible
10   reading, is that '100%' applies to all three words: it's all cheese; all the cheese is Parmesan, and
11   it's all grated.").  On the product box, "24H" is not so far away from or stylistically different from
12   "WITH SUNSCREEN," (Dkt. No. 1 ¶ 21), that only unreasonable consumers would think the
13   former applies to the latter.  *See Meza v. Coty, Inc.*, No. 22-CV-05291-NC, 2023 WL 3082346, at
14   *10 (N.D. Cal. Apr. 24, 2023) ("The CoverGirl product . . . features a durational claim and SPF
15   claim grouped in close proximity. . . .  As Plaintiff alleges, when read in vertical fashion, it is
16   reasonable to interpret that the product provides 24 hours of full coverage at SPF 18.").  "24H"
17   modifies "FOUNDATION," which in turn is "WITH SUNSCREEN."  (Dkt. No. 1 ¶ 21.)  That
18   makes this label different from the one at issue in *Klammer v. Mondelez Int'l, Inc.*, on which "high
19   protein" modified "lentils" and "lentil flour," ingredients within the product (chips).  No. 22-CV-
20   02046-JSW, 2023 WL 105095, at *3 (N.D. Cal. Jan. 4, 2023) ("[T]he phrase 'high protein' would
21   not lead the reasonable consumer to believe that the chips themselves are high in protein.").

22         Defendant suggests it is impossible for sunscreen to last 24 hours.  Even if that is true, the
23   Court cannot conclude reasonable consumers would know that as a matter of law.  In *Moore v.*
24   *Trader Joe's Co.*, for example, the Ninth Circuit held reasonable sophisticated consumers of
25   Manuka honey, an "effete" product, know bees are foraging insects and "it is impossible to
26   exercise complete control over where bees forage down to each specific flower or plant."  4 F.4th
27   874, 883, 884 n.11 (9th Cir. 2021).  Therefore, "as a matter of law, other available information
28   about Trader Joe's Manuka Honey would quickly dissuade a reasonable consumer from the belief

1   that Trader Joe's Manuka Honey was derived from 100% Manuka flower nectar." *Id.* at 883. The

2   scientific consensus about how long a drug lasts is not as obvious to the reasonable consumer. It

3   is nowhere near as obvious as that Froot Loops and Cap'n Crunch cereal, though colorful, are not

4   made of real fruit. *See id.*; *see also, e.g.*, *Gitson v. Trader Joe's Co.*, No. 13-CV-01333-VC, 2015

5   WL 9121232, at *1 (N.D. Cal. Dec. 1, 2015) ("The reasonable consumer (indeed, even the least

6   sophisticated consumer) does not think soymilk comes from a cow."); *Red v. Kraft Foods, Inc.*,

7   No. CV 10–1028–GW(AGRx), 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) ("a reasonable

8   consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh

9   vegetables"). Indeed, that the FDA requires sunscreen labels to tell consumers to reapply suggests

10  many do not know they should do so. *See POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102,

11  108 (2014) ("The FDCA statutory regime is designed primarily to protect the health and safety of

12  the public at large."); *Wyeth v. Levine*, 555 U.S. 555, 574 (2009) ("Congress enacted the FDCA to

13  bolster consumer protection against harmful products.").

14  Other than the drug facts panel's instruction to reapply after two hours, nothing else about

15  the product, such as price, creates a "contextual inference[]" that would lead the reasonable

16  consumer to know the SPF benefits last less than 24 hours. *Moore*, 4 F.4th at 882 ("information

17  available to a consumer is not limited to the physical label and may involve contextual inferences

18  regarding the product itself and its packaging"). And the drug facts panel does not cure, as a

19  matter of law, what is plausibly false or misleading about "24H." *See Williams v. Gerber Prods.*

20  *Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("We disagree with the district court that reasonable

21  consumers should be expected to look beyond misleading representations on the front of the box

22  to discover the truth from the ingredient list in small print on the side of the box."); *Ebner*, 838

23  F.3d at 966 ("*Williams* stands for the proposition that *if* the defendant commits an act of deception,

24  the presence of fine print revealing the truth is insufficient to dispel that deception.").

25  \* \* \*

26  Plaintiff adequately alleges Defendant's statements are false or misleading under the

27  CLRA and FAL and unfair and fraudulent under the UCL. Accordingly, she also adequately

28  alleges the statements are "unlawful" under the UCL's third prong. *Cel-Tech Commc'ns, Inc. v.*

United States District Court
Northern District of California

1  *L.A. Cellular Tel. Co.*, 973 P.2d 527, 539–40 (1999) ("By proscribing 'any unlawful' business
2  practice, section 17200 borrows violations of other laws and treats them as unlawful practices that
3  the [UCL] makes independently actionable." (cleaned up)).  Defendant's motion to dismiss on this
4  basis is DENIED.

### III.    OTHER PRODUCTS

"[A] plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012).  "Although the Ninth Circuit has not directly addressed 'substantial similarity' for purposes of consumer fraud-based class actions, district courts, driven by *Armstrong*, have taken a broad approach." *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 907 (N.D. Cal. 2021); *see Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001).

Plaintiff alleges the Dior Forever Skin Glow Foundation, which she did not buy, "predominately, uniformly, and consistently include[s], on the principal display panel of the product boxes and bottles, an SPF claim alongside a claim that the product[] last[s] longer than two hours." (Dkt. No. 1 ¶ 20.)  But she does not quote or provide a photo of the label text. *See Anderson v. The Hain Celestial Grp., Inc.*, 87 F. Supp. 3d 1226, 1233 (N.D. Cal. 2015).  As such, the Court cannot evaluate "the similarity of the claims and injuries flowing from the misrepresentations on each product." *Cimoli*, 546 F. Supp. 3d at 908; *cf. Miller*, 912 F. Supp. 2d at 870–72 ("[T]he products are different: baking chips, three drink powders, and wafers. . . . They look different, they are labeled differently (white mocha for a drink, Frappe Classico Classic White for another drink) . . . . [Plaintiff's] best argument is that the labels imply white chocolate content, but the alleged misrepresentations vary widely.").  Similarly, the Court cannot evaluate whether other unidentified products are similar to the product Plaintiff bought.  *See Meza*, 2023 WL 3082346, at *4.

Accordingly, Plaintiff has not established her standing to assert class claims based on products she did not buy.  Defendant's motion to dismiss on this basis is GRANTED.

### IV. INJUNCTIVE RELIEF

As a matter of Article III standing to seek injunctive relief, a plaintiff must establish "an actual and imminent, not conjectural or hypothetical threat of future harm." *Davidson*, 889 F.3d at 969 (cleaned up). In the false advertising context,

> a previously deceived consumer may have standing to seek an injunction . . . even though the consumer now knows or suspects that the advertising was false at the time of the original purchase . . . . Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to. In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved.

*Id.* at 969–70 (cleaned up). Plaintiff alleges she would like to buy Defendant's products and would likely do so in the future if they "were reformulated and/or relabeled without the misleading 24 hour SPF claims." (Dkt. No. 1 ¶ 56.) Drawing all inferences in Plaintiff's favor, suppose Defendant changed its product to provide SPF protection for a longer or shorter length of time than two hours; Plaintiff might not be able to tell whether the labels were accurate. *See Davidson*, 889 F.3d at 971. Or suppose Defendant changed its labels to state the SPF protection lasts for two hours, not 24; Defendant might have to lower the price, and Plaintiff might be willing to pay that lower price.

Accordingly, drawing all inferences in her favor, Plaintiff has established standing to seek injunctive relief. Defendant's motion to dismiss on this basis is DENIED.

### CONCLUSION

Defendant's motion is GRANTED as to Plaintiff's claims based on products she did not buy; they are dismissed with leave to amend. *See Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017). Defendant's motion is otherwise DENIED as to Plaintiff's CLRA, FAL, UCL, and fraud, deceit, and/or misrepresentation claims.

Plaintiff may file an amended complaint on or before **June 2, 2023**.

This Order disposes of Docket No. 23.

**IT IS SO ORDERED.**

Dated: May 12, 2023

 _____
 JACQUELINE SCOTT CORLEY
 United States District Judge