**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Hayley A. Reynolds (State Bar No. 306427)
  hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiff Alexis Slaten*

## UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXIS SLATEN, an individual, on behalf of herself, the general public, and those similarly situated,<br><br>            Plaintiff,<br><br>   v.<br><br>CHRISTIAN DIOR PERFUMES, LLC,<br><br>            Defendant. | Case No. 3:23-cv-00409-JSC<br><br>**PLAINTIFF'S MOTION FOR RECONSIDERATION UNDER FED. R. CIV. P. 60(b)(6) AND 62.1(a)**<br><br>Hearing Date:    Sept. 26, 2024<br>Hearing Time:    10:00 AM<br>Location:       SF Courtroom 8<br><br>Hon. Judge Jaqueline Scott Corley |

## **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................ 1

II.   BACKGROUND AND PROCEDURAL HISTORY ..................................................... 4

III.  LEGAL STANDARDS ............................................................................................... 7

IV.   ARGUMENT ............................................................................................................. 9

   A.   *Whiteside* and *McGinity* have a "close relationship," and *Whiteside* supplants this Court's analysis in *Dior II & III*. ...................................................................... 10

      1.   1.... *Dior II* was Expressly Predicated on an Interpretation of *McGinity* that *Whiteside* Rejected, and *Whiteside* Makes Clear that Plaintiff's Allegations in the FAC Survive Dismissal ...................................................... 10

      2.   2.........*Dior III* Was also Predicated on Interpretations of *McGinity* that *Whiteside* Rejected, Which Similarly Makes Clear That the Allegations in the SAC Survive Dismissal. ............................................................................ 14

   B.   *Whiteside* was an intervening change in how the Ninth Circuit applies *McGinity*, which was never a settled legal principle. .......................................................... 17

   C.   There is no "reliance interest" jeopardized by granting Rule 60(b)(6) relief. ...... 19

   D.   The other *Phelps* factors either support vacating the judgment under Rule 60(b)(6), or otherwise are not at issue before this Court. ...................................... 20

   E.   Even if this Court lacks jurisdiction to grant proper relief under Rule 60(b)(6), this Court should either make an indicative ruling on the 60(b)(6) motion, or indicate that the 60(b)(6) motion raises a substantial issue as to the decision. ........................................... 21

V.    CONCLUSION .......................................................................................................... 23

# TABLE OF AUTHORITIES

*Cases*

*Agostini v. Felton*, 521 U.S. 203 (1997) ............................................................. 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................... 8, 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................... 7, 14

*Bobbitt v. Milberg LLP*, 807 F. App'x 628 (9th Cir. 2020) ................................ 20

*Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156 (2018) ........................................ 11

*Bynoe v. Baca*, 966 F.3d 972 (9th Cir. 2020) .................................................... 21

*Caldwell v. Nordic Naturals, Inc.*, 2024 U.S. Dist. LEXIS 451 (N.D. Cal. Jan. 2, 2024) ............ 18

*Evangelatos v. Superior Court*, 44 Cal. 3d 1188, 1207 (1988) ......................... 22

*Gonzalez v. Chattem, Inc.*, 2023 U.S. Dist. LEXIS 208817 (N.D. Cal. Nov. 21, 2023) .............. 18

*Gonzalez v. Crosby*, 545 U.S. 524 (2005) ...................................................... 8, 17

*Henson v. Fid. Nat'l Fin., Inc.*, 943 F.3d 434 (9th Cir. 2019) ...................... 10, 20, 21

*Howard v. Hain Celestial Grp., Inc.*, 2023 U.S. Dist. LEXIS 144601 (N.D. Cal. Aug. 17, 2023) .................................................................................. 18

*In re DirecTV Early Cancellation Fee Mktg. & Sales Practices Litig.*, 810 F. Supp. 2d 1060 (C.D. Cal. 2011) ............................................................. 23

*Jones v. Johnson*, 781 F.2d 769 (9th Cir. 1986) ................................................. 8

*Jones v. Ryan*, 733 F.3d 825 (9th Cir. 2013) ................................................ 8, 21

*Lawson v. Grubhub, Inc.*, No. 15-cv-05128-JSC, 2018 U.S. Dist. LEXIS 201718 (N.D. Cal. Nov. 28, 2018) ................................................................ passim

*Lozano v. Walmart, Inc.*, 2024 U.S. Dist. LEXIS 18214 (C.D. Cal. Feb. 1, 2024) ................ 18

*Newman v. Emerson Radio Corp.*, 48 Cal. 3d 973 (1989) ................................ 22

*Out of the Box Enters., Ltd. Liab. Co. v. El Paso Jewelry Exch.*, Inc., 737 F. App'x 304 (9th Cir. 2017) ........................................................................ 9

*Phelps v. Alameida*, 569 F.3d 1120 (9th Cir. 2009) ............................... 8, 10, 17, 20

*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477 (1989) ........................ 18

*Russell Rd. Food and Beverage, LLC v. Galam*, 2013 WL 2949615 (D. Nev. June 13, 2013). .... 9

*Shalikar v. Asahi Beer U.S.A.*, No. LA CV17-02713 JAK (JPRx), 2017 U.S. Dist. LEXIS 221388 (C.D. Cal. 2017).................................................................................................................... 8

*Silbersher v. Allergan Inc.*, 2024 U.S. Dist. LEXIS 83249 (N.D. Cal. May 7, 2024)................. 22

*Venoco, Ltd. Liab. Co. v. Plains Pipeline, Ltd. P'ship*, 2022 U.S. App. LEXIS 9851 (9th Cir. Apr. 12, 2022)........................................................................................................................ 20

*Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771 (9th Cir. 2024)...................................... passim

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008)................................................. 1, 17

*Zimmerman v. L'Oreal USA, Inc.*, 2023 U.S. Dist. LEXIS 219157 (N.D. Cal. Dec. 8, 2023)..... 18

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................................... 7

Fed. R. Civ. P. 60(b)-(c) ........................................................................................................... 9

Fed. R. Civ. P. 62.1(a) .......................................................................................................... 9, 22

**Regulations**

21 C.F.R. § 201.327 ................................................................................................................ 4

1

## I.   INTRODUCTION

2

3         The Ninth Circuit's recent decision in *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771

4    (9th Cir. 2024) "clarify[ies its] analysis" from *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093

5    (9th Cir. 2023), and essentially cabins *McGinity* to its facts. This Court's previous two orders

6    dismissing this case were expressly predicated on a broad interpretation of *McGinity* that the Ninth

7    Circuit has now clarified is incorrect. Indeed, *Whiteside* demonstrates unequivocally that

8    Plaintiff's consumer protection claims here must survive dismissal. Accordingly, based on this

9    intervening change in the law, Plaintiff respectfully requests, and the Court should grant, relief

10   from those orders under Rule 60(b)(6). Although Rule 60(b)(6) is an "extraordinary remedy," this

11   Court has already shown it is committed to deciding issues correctly; it should therefore take this

     opportunity to do so again.

12        As this Court will recall, Plaintiff alleges that Defendant's front label "24H

13   FOUNDATION . . . WITH SUNSCREEN" claim misleads reasonable consumers about the

14   duration of the sunscreen in its products, which does not (and cannot) last more than two hours.

15   On Dior's first motion to dismiss, this Court held that the claim was plausibly misleading. ECF 43

16   ("*Dior I*"). As the Court explained, "'24H' was not so far away from or stylistically different from

17   'WITH SUNSCREEN,'" which meant that reasonable consumers could easily believe that the

18   "24H" representation applied to both the products' cosmetic *and* sunscreen benefits. *Dior I*, ECF

19   43 at 6-7. Defendant had argued that the back label drug facts panel's instruction to "reapply at

20   least every 2 hours" cured any deception. But this Court correctly applied the Ninth Circuit's then-

21   only guiding decision in the area of the "front-back dichotomy"—*Williams v. Gerber Prods. Co.*,

22   552 F.3d 934, 939 (9th Cir. 2008)—and held that since the front label was plausibly misleading,

23   the back label could "not cure" that deception as a matter of law. ECF 43 at 8.

24        Not long thereafter, however, the Ninth Circuit decided *McGinity*, which held that when

25   "a front label is ambiguous, the ambiguity can be resolved by reference to the back label," even

26   on the pleadings. 69 F.4th at 1099. So, when Dior again moved to dismiss, this Court rightly gave

27

28

the "front-back" issue a second look. The only question was how to determine whether the claim was "ambiguous" versus "plausibly misleading." Dior argued that "*McGinity* explained that where a claim is susceptible to more than one reasonable interpretation" it is ambiguous, not misleading, period. ECF 54 at 6. Plaintiff, by contrast, argued that "*McGinity* is much narrower that Defendant suggests"; it "did not hold that a claim on a label that could conceivably have more than one meaning was 'ambiguous' rather than misleading." ECF 61 at 6. Instead, Plaintiff argued that, "*Williams v. Gerber Prods. Co.* is still good law," which meant that, so long as one interpretation of a claim was plausibly misleading, it could not be dismissed based on the back label. *Id.* at 5–6.

Ultimately, this Court adopted Defendant's more expansive reading of *McGinity*, reasoning that since the front label could be interpreted to mean *either* that the 24H claim applied to the cosmetics, or that it applied to both the cosmetics and the sunscreen, it was ambiguous. ECF 69 at 4 ("*Dior II*"). As a result, the Court concluded that the back label "resolved the ambiguity" and dismissed all of Plaintiff's claims. *Id.* at 9. Plaintiff amended with survey allegations to try to address these issues, but in *Dior III*, this Court held that the fundamental issue was the same: there were two reasonable interpretations of the front label, which rendered the claim ambiguous. ECF 83 at 6-7. The Court stated during the hearing that "common sense tells us [that consumers] are not going to look at the back label" when buying this product as a factual matter (*see* Mot. to Dismiss Hr. Tr. (Mar. 14, 2024) at 18:1-4), but it concluded that, nevertheless, due to the ambiguity, *McGinity* required it to consider the back label as a matter of law. ECF 83 at 9, 13.

The Court should now revisit this issue again. In *Whiteside*, the Ninth Circuit held that "read[ing] *McGinity* to mean that a front label is ambiguous if it can have more than one possible meaning . . . would effectively overrule *Williams* [*v. Gerber*,] something we did not and could not do as a three-judge panel of the Ninth Circuit." 2024 U.S. App. LEXIS 17532 *14, 17. "*Williams* . . . requires only that a front label be plausibly misleading for a plaintiff to survive dismissal, and *McGinity* did not hold otherwise." *Id.* *17-18. Although *Whiteside* "acknowledge[s] that *McGinity* len[t] some facial support to Defendant's position," which makes the Court's mistake in this area

1    understandable, it is still mistaken. *Whiteside* "clarif[ies]" *McGinity* and explicitly holds that "***a***

2    ***front label is not ambiguous simply because it is susceptible to two possible meanings***." *Id.* *15,

3    18 (emphasis added). Instead, *McGinity* stands only for the proposition that a claim is ambiguous

4    when it is "***so devoid of any concrete meaning*** that . . . reasonable consumers would ***necessarily***

5    ***require*** more information before reasonably concluding that the label is ***making a particular***

6    ***representation***." *Id.* *16, 18 (emphasis added). Absent that, *Williams* still governs, and if a claim

7    has one plausibly misleading interpretation, then the back label cannot be a basis for dismissal. *Id.*

8            In short, Plaintiff was right about *McGinity* all along, and Defendant's expansive reading,

9    which this Court understandably adopted, was wrong. That makes this case easy. This Court

10    already determined in *Dior I* that Defendant's front label is plausibly misleading, and nothing

11    changes that. The front label is not "so devoid of any concrete meaning" like the "all-but-

12    meaningless marketing term '**NatureFusion**' in *McGinity*" to even remotely approach *Whiteside*'s

13    clarified ambiguity standard. *Id.*, *16, 20. Accordingly, this Court was prohibited from considering

14    the back label on the pleadings, let alone determining its impact on consumer interpretation of the

15    front label as a matter of law. *Id.*, *22. Instead, what effect, if any, it may ultimately have on the

16    question of deception, remains for the "fact-finder" at trial. *Id.*, *11; *20.

17            Although Plaintiff's case is currently on appeal, this Court can still revisit and correct its

18    own rulings without the intervention of the Ninth Circuit. Under Federal Rule of Civil Procedure

19    60(b)(6), *Whiteside* is indisputably an intervening change in the law on which this Court's

20    dismissal orders were based. That necessitates relief from those judgments. And, given how clearly

21    *Whiteside* affects this Court's rulings in *Dior II/III*, this Court *should do so*. Moreover, given that

22    briefing has not even opened in the appeal, Rule 60(b)(6) relief is the most efficient use of judicial

23    resources. At minimum, the Court can and should issue an indicative ruling pursuant to Rule

24    62.1(a) on the as-presented Rule 60(b)(6) motion, or otherwise find that the motion raises a

25    substantial issue. This is not only correct; it is consistent with this Court's prior approach when

26

27

28

1   presented with a similar issue in *Lawson v. Grubhub, Inc.*, No. 15-cv-05128-JSC, 2018 U.S. Dist.

2   LEXIS 201718, at *19 (N.D. Cal. Nov. 28, 2018).

3   **II.    BACKGROUND AND PROCEDURAL HISTORY**

4          As this Court knows, Plaintiff alleged that Defendant misled consumers by labeling certain

5   foundations as "24H FOUNDATION . . . WITH SUNSCREEN," and "24H WEAR . . . WITH

6   SUNSCREEN" both of which also emphasized that they were "BROAD SPECTRUM SPF 15."

7   SAC ¶¶ 21–23. Plaintiff alleged that "consumers interpret the claims on these labels collectively

8   to mean that the sunscreen benefits in the Products will last longer than two hours without the need

9   to reapply." *Id.* ¶ 23.[1] Defendant's Products, however, cannot and do not provide more than two

10  hours of sunscreen protection. SPF products are fully effective for only two hours, at which point

11  they must be reapplied to provide continued protection from the sun. *Id.* ¶¶ 3, 18; *see* 21 C.F.R.

12  § 201.327. Indeed, Defendant admits this; it includes a fine print instruction on the back panel of

13  the products to "reapply at least every 2 hours." As a result, Plaintiff alleges that Defendant's label

14  is false and misleading in violation of California law and parallel federal regulations.

15         This Court first concluded in *Dior I* that "members of the public are likely to be deceived"

16  by the Products' labels. The Court held that Plaintiff "alleges facts supporting a reasonable

17  inference that consumers increasingly care about sun protection, which supports an inference they

18  may choose Defendant's products believing that its SPF benefits will last for '24H.'" ECF 43 at

19  6–7. Defendant argued that "the '24H' promise applies only to the product's cosmetic benefits,"

20  but this Court held that, "drawing all inferences in Plaintiff's favor, reasonable consumers could

21  think otherwise." *Id.* at 7. As the Court explained, "'24H' is not so far away from or stylistically

22  distinct from 'WITH SUNSCREEN,' that only unreasonable consumers would think the former

23  applies to the latter. '24H' modifies 'FOUNDATION,' which in turn is 'WITH SUNSCREEN'"

24

25  _____

    [1] Contrary to Dior's prior assertions, Plaintiff has always alleged that these labels led consumers
26  to believe that the SPF lasts "longer than two hours." *Compare* ECF 1 ¶¶ 19–21, 39, 43, 45, 60,
    60(f), 70, 76, 86–87, 96, 109 *with* ECF 73-1 ¶¶ 19–21, 52, 57, 72, 72(f), 82, 88, 98–99, 108, 121.
27  Plaintiff also consistently defined the Products as those with an SPF claim and a claim that the
    Products "last longer than two hours." ECF 1 ¶ 20; ECF 48 (FAC) ¶ 20; ECF No. 73 (SAC) ¶ 20.

- 4 -

28  PLAINTIFF'S MOTION FOR RECONSIDERATION UNDER FED. R. CIV. P. 60(B)(6) AND 62.1(A) – CASE
    NO. 3:23-CV-00409-JSC

*Id.* (citations omitted). Defendant also argued that the back label's "reapply" instruction cured any potential deception, but the Court cited *Williams v. Gerber* to hold that "the drugs facts panel does not cure, as a matter of law, what is plausibly false or misleading about '24H'" *Id.* at 8. The Court did dismiss Plaintiff's claims as to the product she had not purchased, but only because there were no images from which the Court could determine that the product labels were substantially similar. *Id.* at 9. Accordingly, the Court granted leave to amend for Plaintiff to correct that deficiency. Plaintiff filed her First Amended Complaint making no substantive changes, merely adding a picture of the Dior Forever Skin Glow Foundation to demonstrate the Product is substantially similar to the Product Plaintiff purchased. *See* ECF 48 (First Amended Complaint ("FAC")).

Soon after, the Ninth Circuit decided *McGinity*, which held that a back label could be considered at the pleading stage where the front label was ambiguous. Given this, Dior again moved to dismiss. It argued that *McGinity* worked a sea change in the law: "reshaping how courts evaluate product labeling claims"; "clarify[ing] that *Williams* does not" apply; and requiring consideration of the back label "as a matter of law" anytime a challenged claim "is susceptible to more than one reasonable interpretation." ECF 54 at 1-2, 6. Plaintiff, by contrast, argued that "*McGinity* is much narrower that Defendant suggests"; it "did not hold that a claim on a label that could conceivably have more than one meaning was 'ambiguous' rather than misleading." ECF 61 at 6. Instead, Plaintiff argued that, "*Williams v. Gerber Prods. Co.* is still good law," which meant that, so long as one interpretation of a claim was plausibly misleading, it could not be dismissed based on the back label. *Id.* at 5–6. And since, "unlike in *McGinity*, the Products here *do promise* that the foundations last '24H' and contain sunscreen" consumers could reasonably interpret the claim to mean that the "24-hour durational claim . . . applies to the foundation as a whole, including the sunscreen" which is plausibly misleading, as the Court had already held. *Id.* at 7.

Nevertheless, this Court adopted Dior's broad reading of *McGinity* and granted Defendant's motion to dismiss the First Amended Complaint, though with leave to amend since *McGinity* was so new. ECF 69, "*Dior II*" at 9. First, the Court found that Plaintiff had not alleged

that the front label was unambiguously deceptive because Plaintiff had not excluded the plausibility of an alternative interpretation. *Id.*, at 5. It agreed that, although Plaintiff's interpretation was plausible, so was Defendant's, i.e., that some consumers would believe that the "24H" applied only to the cosmetics. *Id.* Given those two possible interpretations, the Court held that the claim was only ambiguous. *Id.* The Court then considered the back label and held that "the front label's ambiguity is resolved by reference to the back label: the '24H' representation is unrelated to the product's sun protection benefits, and consumers using the product as sunscreen should reapply the product every 2 hours." *Id.* at 8. The Court reasoned that the back label "identifies sunscreen as the purpose of the product's active ingredients and directs users to '[r]eapply at least every 2 hours.'" *Id.*

To reconcile with Dior's reading of *McGinity*, Plaintiff filed a Second Amended Complaint containing new survey and consumer review allegations. SAC ¶¶ 27–37. Specifically, "[t]hree surveys [] showed respondents images of the Product labels to determine how reasonable consumers interpret the Products' claims." *Id.* Each survey asked the same question: "whether, based on the product packaging, they would expect the sunscreen benefits in the product to last two hours or less, or more than two hours." *Id.* The surveys differed only in the way they presented the front and back labels. *See* SAC ¶ 27. Survey 1 showed only the front label, and concluded that "a super-majority of respondents," i.e., 69%, took the same misleading message away from it, i.e., that the sunscreen would last more than two hours. *Id.* ¶ 28. Survey 2 gave consumers the option to look at the back label with the instruction to do so exactly as they would when shopping for the product in a real store; it confirmed the results of Survey 1 and further demonstrated that "approximately two-thirds of reasonable consumers who shop for the Products do not look at [the] back label" and "rely solely on the front label." *Id.* ¶ 30. "Survey 3 forced consumers to view the front and back label side-by-side," revealing that "half of the respondents, i.e., 50%, were *still* confused, deceived, or misled" by Dior about how long the sunscreen would last. *Id.*

1    Dior again moved to dismiss. After oral argument, this Court retained its adherence to

2    Dior's interpretation of *McGinity*, and found Dior's label ambiguous under that standard because

3    there were still the same two possible interpretations of the claim from *Dior II*. ECF 83 at 5-6. The

4    Court then addressed whether any of Plaintiff's new survey allegations and held that they "fail to

5    disrupt the Court's prior conclusion the Product's front label is ambiguous as to whether the '24H'

6    representation applies to the Products' claimed sun protection benefits or only the cosmetic

7    benefits." *Id.* at 7. As to Survey 1, the Court accepted that it showed that the front label deceived

8    69% of consumers, but held that the "results do not establish the front label is unambiguously

9    deceptive; instead, they show 31% of Survey 1 participants . . . were not deceived" which the Court

10   believed showed that "the front label is at best ambiguous." *Id.* at 6. As for Survey 2, the Court

11   held that even if 66% of consumers do not look at the back label when shopping for these products,

12   "*McGinity*'s central mandate" was that "[s]ince the front label is ambiguous, the Court must

13   considered the back label regardless of whether survey participants chose to click to see the back

14   label when given the opportunity." *Id.* at 9. In other words, as the Court stated, *McGinity* made

15   this "a legal question for the Court" and "Plaintiff [was] incorrect" that this was "'still a question

16   of fact.'" *Id.* at 13.

17   Plaintiff timely appealed to the Ninth Circuit, believing that Dior's (and this Court's)

18   expansive interpretation of *McGinity* would impermissibly overrule *Williams* and decades of

19   similar Ninth Circuit precedent. While that appeal was pending, the Ninth Circuit decided

20   *Whiteside*, confirming that Plaintiff was correct in her construction of the law. Indeed, as discussed

21   below, the Ninth Circuit clarified that *every* point of *McGinity* upon which Dior insisted—and this

22   Court relied—in dismissing Plaintiff's claims in *Dior II/III*—was wrong.

23   **III.    LEGAL STANDARDS**

24                          a)    Fed. R. Civ. P. 12(b)(6)

25   To survive a Rule 12(b)(6) motion, the claimant need only allege "enough facts to state a

26   claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

27   "[A] claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the

28

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). This is not a probability standard, the allegations need only "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. Moreover, "[w]hen 'consumer survey data is incorporated into . . . [a complaint], . . . the Court must presume its truth' on a motion to dismiss, even if a defendant has raised colorable arguments as to the reliability of the survey methodology." *Shalikar v. Asahi Beer U.S.A.*, 2017 U.S. Dist. LEXIS 221388, at *18 (C.D. Cal. 2017) (alterations in original and quotations omitted); *see McGinity*, 69 F.4th at 1099 ("we accept the allegations concerning the survey as true at this stage of litigation"). "This rule arises from the well-established principle that 'any weighing of evidence is inappropriate on a 12(b)(6) motion." *Shalikar*, 2017 U.S. Dist. LEXIS 221388, at *18 (citing *Jones v. Johnson*, 781 F.2d 769, 722 n.1 (9th Cir. 1986).

### b) Rule 60(b)(6)

Courts can revisit and correct prior judgements under Federal Rule of Civil Procedure 60(b). Doing so is especially appropriate in the event of an intervening change in the law. *See Phelps v. Alameida*, 569 F.3d 1120, 1133 (9th Cir. 2009) (citing *Gonzalez v. Crosby*, 545 U.S. 524 (2005)). In particular, a change in law is well-established as one of the "other reasons justifying relief" under Rule 60(b)(6). *See Phelps*, 569 F.3d 1120 at 1133. "[T]he proper course when analyzing a Rule 60(b)(6) motion predicated on an intervening change in the law is to evaluate the circumstances surrounding the specific motion before the court." *Id*. Usually, courts balance six factors (known as the "*Phelps* factors") consisting of: "(1) the change in the law; (2) 'the petitioner's exercise of diligence in pursuing his claim for relief[;]' (3) whether reopening the case would upset 'the parties' reliance interest in the finality of the case[;]'(4) the extent of 'the delay between the finality of the judgment and the motion for Rule 60(b)(6) relief[;]' (5) the relative 'closeness of the relationship between the decision resulting in the original judgment and the subsequent decision that represents a change in the law[;]' and (6) concerns of comity." *See Jones v. Ryan*, 733 F.3d 825, 839-40 (9th Cir. 2013); *Phelps*, 569 F.3d at 1135-39.

This six-factor *Phelps* test is the heart of Rule 60(b)(6)'s "case-by-case inquiry." *See Phelps*, 569 F.3d at 1133-34. But these factors do not "impose a rigid or exhaustive" checklist: While courts can weigh each *Phelps* factor differently, recent opinions prioritize "the change in the law" (the first *Phelps* factor) and the "closeness of the relationship between the decision resulting in the original judgment and the subsequent decision" (the fifth), especially when the other factors are either uncontested or indisputable. *See, e.g., Lawson*, 2018 U.S. Dist. LEXIS 201718, at *19. Plaintiff therefore discusses these factors first.

### c) Rule 62.1

District courts generally lack jurisdiction to grant Rule 60(b) motions while an appeal is pending. Rule 62.1, however, authorizes district courts to issue an indicative ruling. *See* Fed. R. Civ. P. 62.1(a); *see also Out of the Box Enters., Ltd. Liab. Co. v. El Paso Jewelry Exch*., Inc., 737 F. App'x 304, 305 (9th Cir. 2017). Under Rule 62.1, a court may "state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1(a)(3). A motion raises a substantial issue when "the movant has raised an issue that merits reconsideration of the order." *Russell Rd. Food and Beverage, LLC v. Galam*, 2013 WL 2949615, at *2 (D. Nev. June 13, 2013). If the court indicates that it would grant the Rule 60 motion or finds the existence of a "substantial issue," "[t]he movant must promptly notify the circuit clerk" and "[t]he district court may decide the motion if the court of appeals remands for that purpose." Fed. R. Civ. P. 60(b)-(c).

## IV.   ARGUMENT

This Court should revisit and correct its orders in *Dior II* and *III* in light of the Ninth Circuit's intervening and controlling decision in *Whiteside*, 108 F.4th 771. *Whiteside* clarifies and cabins the narrow scope of *McGinity*—the decision that changed this Court's opinion about the viability of Plaintiff's claims (*compare Dior I* with *Dior II/III*). *Whiteside* shows that this Court was initially correct when it ruled that Dior's "product labels are [plausibly] false or misleading," and that Dior's back panel "does not cure, as a matter of law, what is plausibly false or misleading" about the front label. *Dior I*, ECF 43 at 8. It also establishes that virtually every point in *Dior II*

and *III* were wrong. Although relief under Rule 60(b)(6) is an "extraordinary remedy," each of the *Phelps* factors weights in favor of granting that relief.

**A.  *Whiteside* and *McGinity* have a "close relationship," and *Whiteside* supplants this Court's analysis in *Dior II & III*.**

*McGinity* ("the decision embodying the original judgment") and *Whiteside* ("the subsequent decision embodying the change in law") are undoubtedly "close[ly] relat[ed]," which strongly weighs in favor of granting relief under Rule 60(b)(6). *See Phelps*, 569 F. 3d at 1138-39. The Ninth Circuit explicitly took *Whiteside* as an "opportunity to clarify [its] analysis in [*McGinity*]." 2024 U.S. App. LEXIS 17532 *15. It also cautioned courts to avoid misinterpreting *McGinity* and that reading *McGinity* without *Whiteside's* clarification, "would effectively overrule *Williams* and *Brady*, something we did not and could not do." *Id*.

Moreover, as this Court has previously explained, this "factor weighs strongly in favor of granting [a] Rule 60(b)(6) motion" when a change in law "completely supplants the Court's [prior] analysis . . . and ultimately requires that the outcome of the [decision] be reversed." *Lawson*, 2018 U.S. Dist. LEXIS 201718, at *17. Or, as the Ninth Circuit has put it, where the "intervening change in the law [would] directly overrule[] the decision for which reconsideration was sought." *Phelps*, 569 F.3d at 1139. Here, as explained next, *Whiteside* supplants this Court's analysis in both *Dior II & III*, requiring a different outcome. And, in any event, it is indisputable that this Court's rulings in those twin decisions were "explicitly predicated on the law that [*Whiteside*] changed," i.e., *McGinity*, which, by itself "weighs in favor of Rule 60(b)(6) relief." *Henson v. Fid. Nat'l Fin., Inc.*, 943 F.3d 434, 452 (9th Cir. 2019).

**1.  *Dior II* was Expressly Predicated on an Interpretation of *McGinity* that *Whiteside* Rejected, and *Whiteside* Makes Clear that Plaintiff's Allegations in the FAC Survive Dismissal.**

This Court's dismissal of Plaintiff's claims in *Dior II* was *explicitly predicated* on an interpretation of *McGinity* that *Whiteside* clarified and ultimately rejected. According to this Court in *Dior II*, "*McGinity* holds a product claim is ambiguous if the allegedly deceptive language '***could mean any number of things,***' some of which would not be deceptive." ECF 69 at 4

(emphasis added). And because the Court reasoned that Defendant's front label was subject to two possible interpretations—"'24H' might mean both the cosmetic and sun protection benefits last 24 hours. But it could also plausibly mean only the cosmetic benefits last 24 hours"—it held that the "front label is ambiguous" rather than misleading. *Id.* So "the question under *McGinity*," the Court believed, was whether "the front label's ambiguity is resolved by reference to the back label", which here said "reapply at least every 2 hours." *Id.* at 8. Accordingly, the Court held, as a matter of law, that no reasonable consumer could possibly be deceived. *Id.*

But *Whiteside* explicitly rejected this interpretation of *McGinity* and, thus, "completely supplants" *Dior II*'s analysis. As the Ninth Circuit clarified, "a front label is not ambiguous simply because it is susceptible to two possible meanings." 2024 U.S. App. LEXIS 17532 at *18. Instead, a claim is ambiguous only where it is "so devoid of any concrete meaning that . . . reasonable consumers would **necessarily require** more information before reasonably concluding that the label is **making a particular representation**." *Id.* *16, 18. (emphasis added). To adopt the Defendant's proposed "two possible meanings . . . interpretation of [ambiguity under] *McGinity* would effectively overrule *Williams* and *Brady*, something we did not and could not do as a three-judge panel." *Id.* at *17. "*Williams* and *Brady* require **only that a front label be plausibly misleading** for a plaintiff to survive dismissal, and *McGinity* **did not hold otherwise.**" *Id.* *17-18 (emphasis added). Accordingly, "if a product's front label is plausibly misleading to reasonable customers, then the court **does not consider the back label at the pleadings stage**." *Id.*, *11 (emphasis added).

As the Ninth Circuit explained, "[t]his approach is consistent with California law, both as articulated by California courts and as interpreted in our prior decisions." *Id.*, *16. "California courts have adopted our holding in *Williams* that 'you cannot take away in back fine print what you gave on the front in large conspicuous print.'" *Id.* (citing *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1167 (2018)). Indeed, *Whiteside* notes, California courts have "applied this rule" even where front labels were "susceptible to two possible meanings" and without concluding "that this

1   rendered the label ambiguous." *Id.* *17. *Whiteside* highlights the decision in *Brady* in particular.

2   *Id.* There the plaintiff alleged that "One A Day" branded vitamins were misleading since it really

3   took two to achieve the recommended dosage. *Id.* *17. Defendant argued that the label could not

4   be misleading because "One A Day" was just a brand name, not a dosing instruction, and the back

5   label "clearly directed consumers to take two vitamins daily." *Id.* *11. As *Whiteside* recognized,

6   "[d]espite these two possible interpretations,"—i.e., brand name vs. dosing instruction—"the court

7   ruled that the defendant was precluded from relying on the back label because the plaintiff had

8   plausibly alleged that reasonable customers would see the front label as making an unambiguous

9   representation." *Id.* *17 Or, "[p]ut another way, reasonable consumers would not necessarily

10  require more information before concluding that they needed to take only one vitamin daily." *Id.*

11      The Ninth Circuit applied these legal principles to the claim in *Whiteside*, where plaintiff

12  alleged that the phrase "plant-based wipes" was misleading because it falsely suggested that the

13  baby wipes at issue there were made entirely of plant-based ingredients. *Id.* *4, 19. "Relying on

14  *McGinity*, Defendant, argue[d]" that the phrase plant-based wipes was "at best ambiguous"

15  because it could "reasonably be interpreted to mean that the wipes are *either*" entirely made from

16  plants (plaintiff's interpretation) or that they are "primarily" made of plants (defendant's

17  interpretation). *Id.* * 18–19. Accordingly, defendant argued that, under *McGinity*, the back label

18  disclaimer "NATURAL AND SYNTHETIC INGREDIENTS" "should be considered at this stage"

19  which defendant resolved any ambiguity in Defendant's favor. *Id.*, *6, 19. The district court agreed,

20  the Ninth Circuit did not.

21      In reversing the district court, the Ninth Circuit "reject[ed] Defendant's contention that

22  the . . . front label is ambiguous such that the district court correctly considered the back label." *Id.*

23  * 19. As the Court explained, "a front label is ***not ambiguous*** in a California false-advertising case

24  ***merely because it is susceptible to more than one reasonable meaning***." *Id.* (emphasis added).

25  The Court also concluded that "Defendant's reliance on *McGinity* [was] misplaced" because the

26  representation at issue in *Whiteside*, "plant-based," stood in stark "contrast to the all-but-

27

28
PLAINTIFF'S MOTION FOR RECONSIDERATION UNDER FED. R. CIV. P. 60(B)(6) AND 62.1(A) – CASE NO. 3:23-CV-00409-JSC

meaningless marketing term 'Nature Fusion' in *McGinity*," which the Court explained was "so devoid of any concrete meaning that there was nothing . . . on which *any* reasonable belief could be based about the shampoo's ingredients" without consumers "necessarily requiring" more information from some other source like a back label "before concluding that the products' front labels were making a specific promise." *Id* at *16, 19–20. By contrast, even though the term "'plant-based' could be interpreted in different ways," it still "plausibly coveys a concrete and unambiguous meaning to a reasonable customer: that the product is entirely plant-based and exclusively contains 'natural' materials." *Id.*, *19. Accordingly, the Ninth Circuit concluded that "Plaintiff has plausibly alleged that a reasonable consumer could interpret the front label as unambiguously representing that the Products do not contain synthetic ingredients, and that a reasonable consumer would not necessarily require more information from the back label before so concluding" which precluded "reliance on the back-label ingredients list at this stage." *Id.*, *21-22.

The same is true here. Dior's front label claim "24H Foundation . . . With Sunscreen" plausibly conveys a concrete and unambiguous meaning to reasonable consumers even if it can be interpreted multiple ways. That concrete meaning is, *as this Court already concluded in Dior I*, "the products provide all benefits—including cosmetic coverage and SPF protection—for 24 hours without the need to reapply." *Dior I* at 2 (citing FAC ¶ 22). And, unlike the term "Nature Fusion" from *McGinity*, which was so "devoid of any concrete meaning that there was nothing . . . on which *any* reasonable belief could be based about the shampoo's ingredients," *Whiteside*, 2024 U.S. App. LEXIS 17532 *17, 19–20, here, consumers can reasonably come to the above-described understanding of the sunscreen's duration based on the front label alone, without "necessarily require[ing] more information from the back label before so concluding." *Id.* *22. This is because, again, *as this Court already explained in Dior I*: "'24H' is not so far away from or stylistically distinct from 'WITH SUNSCREEN,' that only unreasonable consumers would think the former applies to the latter. '24H' modifies 'FOUNDATION,' which in turn is 'WITH SUNSCREEN'"

*See Dior I*, ECF 43 at 7. (citations omitted). Moreover, Plaintiff "alleges facts supporting a reasonable inference that consumers increasingly care about sun protection, which supports an inference they may choose Defendant's products believing that its SPF benefits will last for "24H." *Id.* at 6, (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, under *Whiteside*'s "clarification" of *McGinity*, this Court should have decided *Dior II* exactly the same way as *Dior I*: i.e., Plaintiff's claims proceed. This weighs "strongly in favor of granting the Rule 60(b)(6) motion and vacating the judgment." *Lawson* 2018 U.S. Dist. LEXIS 201718 *17.

### 2. *Dior III* Was also Predicated on Interpretations of *McGinity* that *Whiteside* Rejected, Which Similarly Makes Clear That the Allegations in the SAC Survive Dismissal.

*Dior III* carried over from *Dior II* the same incorrect interpretation of *McGinity*'s test for ambiguity (ECF 83 at 6), which, as discussed above, *Whiteside* rejected. But, in addition to that, *Whiteside* also rejects many of the other bases for this Court's decision in *Dior III*, thus supplanting this Court's analysis from that order as well and requiring a different outcome.

First, *Dior III* accepted that "sixty-nine percent of Survey 1 participants answered the Products would provide sunscreen benefits for more than two hours." ECF 83 at 6. But, despite that, it concluded that "[t]hese results do not establish the front label is unambiguously deceptive; instead, they show 31% of Survey 1 participants . . . were not deceived, [which] is consistent with the Court's conclusion the front label is at best ambiguous." ECF 83 at 6. But as *Whiteside* confirms, product labeling is considered deceptive (not ambiguous) for purposes of California's reasonable consumer standard where "*a significant portion* of the general consuming public or of targeted consumers acting reasonably in the circumstances, could be misled." 2024 U.S. App. LEXIS 17532 at *9 (emphasis added). In other words, "a complaint asserting a violation of [California's consumer protection] laws must allege that the packaging will deceive *many consumers*, not just that *a few* might be deceived." *Id.* (emphasis added). It is impossible to conclude that nearly 70% of consumers does not constitute a "significant portion," or that it shows that only "a few might be deceived." Instead, under the appropriate standard, as announced in *Whiteside*, allegations that 70% of consumers come away from a front label with the same false

- 14 -

message are more than sufficient to show that the label is unambiguously deceptive, i.e., that it is not "so devoid of any concrete meaning" that consumers could not conclude "that the products' front labels were making a specific promise." *Id.* * 16.

Indeed, *Whiteside* clearly instructs that "if a product's front label is plausibly misleading to reasonable customers, then the court does not consider the back label at the pleadings stage. Whether the back label ultimately defeats the plaintiff's claims is a question left to the fact-finder." 2024 U.S. App. LEXIS 17532 at *12. *McGinity* "did not hold that a plaintiff must *prove* that the label is unambiguously deceptive to survive dismissal." *Id.* *16 (emphasis in original). Put simply, a survey showing that *nearly 70%* of reasonable consumers are misled by Dior's front label is sufficient to allege that the label is "plausibly misleading to reasonable customers" under *Whiteside*, not ambiguous. Holding otherwise—i.e., that *any* minority in a survey defeats a *supermajority*— would effectively make the "significant portion of reasonable consumers" standard meaningless. Accordingly, Plaintiff's Survey 1 is sufficient under *Whiteside*'s clarification of *McGinity* to show that Defendant's claim is unambiguously deceptive.

Second, *Whiteside* establishes that Plaintiff's allegations in *Dior III* based on Survey 2 were also more than sufficient to show deception rather than ambiguity. In Survey 2, respondents were given a link to the product's back label and told to reference it exactly as they would when shopping for these products in a real store. SAC ¶ 30. Based on that, Plaintiff alleged that 66% of all consumers never even look at the back label of these products. *Id*. This Court disregarded those allegations because "Plaintiff [did] not allege exactly what consumers were asked . . . Were they asked to look at the back if they were unsure about whether the 24H representation applied to sunscreen?" ECF 83 at 9. It then concluded, that under "*McGinity*'s central mandate . . . the court *must* consider what additional information other than the front label was available to consumers . . . regardless of whether survey participants chose to click to see the back label when given the opportunity." *Id*.

PLAINTIFF'S MOTION FOR RECONSIDERATION UNDER FED. R. CIV. P. 60(B)(6) AND 62.1(A) – CASE NO. 3:23-CV-00409-JSC

But in *Whiteside*, the Ninth Circuit held that "front-label ambiguity is determined not by whether a consumer 'could' look beyond the front label, but whether they *necessarily* would do so." 2024 U.S. App. LEXIS 17532 *20 (emphasis in original). The claim has to be so "all-but-meaningless" that consumers *must* look at the back label before coming to *any* conclusion that the front is making "a particular representation," such as with the claim "Nature Fusion," to which the only possible response without more information is "what does that mean?" *Id.* *20, 18. If, by contrast, consumers "***feel no need to look at the back label***," then the claim is ***not*** ambiguous. *Id.*, *15. Applying that standard, if Defendant's claim here were actually ambiguous, survey respondents would *necessarily* "feel the need" to see the back label when given the opportunity *no matter what*. Thus, Survey 2 did not need to prompt consumers to look at the back if they were unsure about how to interpret the 24H claim to provide useful allegations on ambiguity, as the court's analysis in *Dior III* suggested. Instead, Plaintiff's allegation that 66% of consumers—i.e., the vast majority—"feel no need to look at the back label," *id.* *15, demonstrates definitely that the claim is not ambiguous because consumers "necessarily, [*do not*] *require*" any additional information before concluding that the front label "24H" claim is making a sufficiently concrete and specific representation about the sunscreen's duration. *See id.*, *22 (holding that "plant-based wipes" plausibly conveyed a specific representation that "the products do not contain synthetic ingredients" without "necessarily require[ing] more information from the back label before so concluding").

Indeed, as this Court stated during *Dior III*'s oral argument, "if [this Court] draw[s] all inferences in [Plaintiff's] favor—I think probably it supports an inference—common sense tells us they are not going to look at the back label." *See* Mot. to Dismiss Hr. Tr. (Mar. 14, 2024) at 18:1-4. That determination alone should have clinched the issue. This Court is still required to draw all inference in Plaintiff's favor, *Whiteside*, 2024 U.S. App. LEXIS 17532 *8, and the Supreme Court has long held that, in assessing plausibility, a court may "draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, (2009). The Court went

against its own common sense determination, and Plaintiff's allegations of fact, solely because it believed *McGinity required* it to consider the back label as a matter of law. As explained above, that was incorrect. Under *Whiteside*, there can be no doubt that Plaintiff's allegations based on Surveys 1 & 2 conclusively establish that Defendant's "24H" claims are not ambiguous. As such, whatever effect the back label may have on the question of deception is for the finder of fact at trial "not a basis for dismissal under FRCP 12(b)(6)." *Whiteside*, 2024 U.S. App. LEXIS 17532 * 22. *Whiteside* therefore supplants this Court's analysis in *Dior III*, which weighs strongly in favor of granting relief from that judgment under Rule 60(b)(6) as well.

**B.   *Whiteside* was an intervening change in how the Ninth Circuit applies *McGinity*, which was never a settled legal principle.**

Under the "change in law" factor, "the Court must consider the nature of the intervening change in law." *Lawson*, 2018 U.S. Dist. Lexis at *10. One aspect of this factor is whether "the intervening change in the law . . .  overruled an otherwise settled legal precedent." *See Phelps*, 569 F.3d at 1135 (discussing *Gonzalez v. Crosby*, 545 U.S. 524, 542 (2005)). If it did not—usually evidenced by the "unsettled nature of the law prior to [the change]"—this factor "cuts in favor of granting relief." *Phelps*, 569 F. 3d at 1136. Another aspect is whether the change in the law adopts the legal "interpretation [plaintiff] had pressed along"; if so, it "necessarily cuts in favor of granting [Rule 60(b)(6)] relief." *Id*. Here, the Ninth Circuit's quick, course-correcting "clarification" of *McGinity* in *Whiteside* demonstrates that *McGinity* was far from settled. Moreover, *Whiteside* adopted the same, narrow interpretation of *McGinity* that Plaintiff advanced in both *Dior II & III*. Accordingly, this factor weighs in favor of granting relief.

First, *McGinity*'s ambiguity standard was decidedly *not* settled law. Had it been settled, then the Ninth Circuit would not have used *Whiteside*—its first published (and thus only binding) decision in this same area of law—to "clarify [its] analysis in [*McGinity*]." *Whiteside* 2024 U.S. App. LEXIS 17532 *15. Indeed, district courts struggled to reconcile *McGinity*'s holding with *Williams v. Gerber*, a case holding that back labels could not be considered at the pleading stage upon plausible allegations that the front label was misleading. Thus, a majority of district courts

1  attempted to limit or distinguish *McGinity*. *See, e.g.*, *Howard v. Hain Celestial Grp., Inc.*, 2023

2  U.S. Dist. LEXIS 144601, at *1 (N.D. Cal. Aug. 17, 2023) ("The Ninth Circuit's decision in

3  *McGinity* is not applicable"); *Gonzalez v. Chattem, Inc.*, 2023 U.S. Dist. LEXIS 208817, at *17

4  (N.D. Cal. Nov. 21, 2023) ("[U]nlike in *McGinity* . . . the parties disagree as to what reasonable

5  consumers would understand about the Product's ingredients); *Zimmerman v. L'Oreal USA, Inc.*,

6  2023 U.S. Dist. LEXIS 219157, at *8 (N.D. Cal. Dec. 8, 2023) ("[U]nlike *McGinity*, it is not clear

7  that this ambiguity can be resolved by reference to the back label."); *Caldwell v. Nordic Naturals,*

8  *Inc.*, 2024 U.S. Dist. LEXIS 451, at *15 (N.D. Cal. Jan. 2, 2024) ("distinguish[ing] the case from

9  *McGinity*."); *Lozano v. Walmart, Inc.*, 2024 U.S. Dist. LEXIS 18214 (C.D. Cal. Feb. 1, 2024)

10  ("The binding precedent [including *McGinity*] Defendant cites . . . is inapposite"). And, although

11  this Court believed that its more expansive interpretation of *McGinity* controlled its decisions in

12  *Dior II & III*, "law can be *controlling* without being *settled*." G. Alexander Nunn & Alan M.

13  Trammell, Settled Law, 107 Va. L. Rev. 57 (2021) (citing *Rodriguez de Quijas v. Shearson/Am.*

14  *Exp., Inc.*, 490 U.S. 477, 484 (1989) and *Agostini v. Felton*, 521 U.S. 203, 237 (1997)).

15       Second, *Whiteside* adopts the more limited reading of *McGinity* that Plaintiff has advanced

16  all along. For example, in *Dior II*, Plaintiff argued that "*McGinity* did not hold that a claim on a

17  label that could conceivably have more than one meaning was 'ambiguous' rather than misleading."

18  ECF 61 at 6. In *Whiteside* the Ninth Circuit held that "a front label is not ambiguous simply because

19  it is susceptible to two possible meanings." 2024 U.S. App. LEXIS 17532 *18. In *Dior II*, Plaintiff

20  argued that the claims here are not ambiguous because "unlike in *McGinity*" they plausibly

21  communicate a specific message, i.e., they "promise that the foundations last '24H' and contain

22  sunscreen" ECF 61 at 7. *Whiteside* held that front labels are unambiguously deceptive where

23  plaintiffs plausibly allege "that the products' front labels were making a specific promise." 2024

24  U.S. App. LEXIS 17532 *16. Plaintiff also argued in *Dior II* that "*Williams v. Gerber Prods. Co.*

25  is still good law" (ECF 61 at 5), and that this Court's previous conclusion "that Plaintiff 'plausibly

26  allege[d] the product labels are false or misleading and reasonable consumers are likely to be

27

28
PLAINTIFF'S MOTION FOR RECONSIDERATION UNDER FED. R. CIV. P. 60(B)(6) AND 62.1(A) – CASE
NO. 3:23-CV-00409-JSC

misled'" (*id.* at 6 (quoting *Dior I* at 6)), "remains unchanged by *McGinity*." *Id*. *Whiteside* held that "*Williams* and *Brady* require only that a front label be plausibly misleading for a plaintiff to survive dismissal, and *McGinity* did not hold otherwise." 2024 U.S. App. LEXIS 17532 *17-18.

The same is true of Plaintiff's positions on these issues from *Dior III*. Plaintiff argued there that the claims could not be ambiguous because "*two-thirds of all consumers* did not even look at the back label, which confirms that the front label fails to put a significant majority of consumers on notice that they need to seek more information." ECF 79 at 9; *see also id.* at 1 (arguing that "the front label is unambiguous" because "*66% of all consumers do not even look at the back label* before buying because they believe the front gives them enough information"). *Whiteside* agrees with this definition of ambiguity, holding that "a front label is ambiguous when reasonable consumers would *necessarily require* more information before reasonably concluding that the label is making a particular representation" and that if the consumer "would *feel no need to look at the back label*," the "front label would be unambiguously deceptive to an ordinary consumers." 2024 U.S. App. LEXIS 17532 *15, 18 (emphases added). Plaintiff also argued that this entire question of consumer deception and ambiguity remains one of fact, which can be decided as a matter of law only "when it is impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." ECF 79 at 7. *Whiteside* agrees that this is "a question of fact not [usually] appropriate for decision at the pleadings stage," and that "[d]ismissal is appropriate [only] when the advertisement itself makes it impossible for the plaintiff to prove that a reasonable consumer is likely to be deceived." 2024 U.S. App. LEXIS 17532 *9 (alterations omitted).

In short, *McGinity* was not settled law, and *Whiteside* **clarified** that Dior's (and this court's) reading of *McGinity* was overbroad and needs to **change**. Moreover, *Whiteside* adopts a narrow reading of *McGinity*, in line with what Plaintiff has argued all along. Accordingly, this factor weighs strongly in favor of granting relief under Rule 60(b)(6).

## C.  There is no "reliance interest" jeopardized by granting Rule 60(b)(6) relief.

Next, there is no "reliance interest in the finality of the case" in jeopardy. In interpreting Rule 60(b)(6)'s standard, the Ninth Circuit reads "reliance interest" as whether the as-decided

opinion has "caused one or more of the parties to change his legal position in reliance on that judgment." *Phelps*, 569 F.3d at 1136. The Ninth Circuit offers such grave examples as "when a judgment conveys land from one party to another and the prevailing party enter[s] upon the land and install[s] pipes and appurtenances, or when a judgment affords a federal habeas petitioner a new trial that results in the eventual dismissal of the charges and his release from custody." *Henson v. Fid. Nat'l Fin., Inc.*, 943 F.3d 434, 450 (9th Cir. 2019) (quoting *Phelps*).

There is no reliance interest here. This Court granted Dior's motion to dismiss and in so doing preserved the status quo. There is *no* evidence that Dior "changed its legal position in reliance on the district court's judgment." *Bobbitt v. Milberg LLP*, 807 F. App'x 628 (9th Cir. 2020) (applying *Phelps*); *see also Venoco, Ltd. Liab. Co. v. Plains Pipeline, Ltd. P'ship*, 2022 U.S. App. LEXIS 9851, at *4 (9th Cir. Apr. 12, 2022) (where there is "no argument that [Defendant] had any reliance interest in finality, nor does [the Court's] review of the record yield any evidence of reliance interests," there is no reliance interest). And even if Dior did, it wouldn't have done so *reasonably*; there is still a pending appeal. "[T]he finality interest in this case is even weaker than that in *Phelps* because, here, Plaintiff['s] appeal had not been finally decided before [the intervening decision] changed the law." *Henson*, 943 F.3d at 450. Indeed, should this Court elect to revisit its decision, "the parties would simply pick up where they left off," which "weighs heavily in [Plaintiff's favor]." *Id*. Moreover, doing so would not require any new evidence. *Whiteside* merely clarifies the outer limits of how this Court must interpret *McGinity*, given the record (including Plaintiff's three surveys) in front of the Court. Accordingly, "this factor should weigh[] heavily in [Plaintiff's] favor." *Henson,* 943 F.3d at 450.

### D. The other *Phelps* factors either support vacating the judgment under Rule 60(b)(6), or otherwise are not at issue before this Court.

The remaining *Phelps* factors cannot compel a different result. As noted above, beyond the crucial "change in the law," "close relationship," and "reliance interest" factors, a court evaluating a 60(b)(6) "intervening change in the law" motion for reconsideration "should balance . . . the petitioner's exercise of diligence in pursuing his claim for relief . . .  the extent of the delay between

the finality of the judgment and the motion for Rule 60(b)(6) relief; . . . and concerns of comity." *Jones v. Ryan*, 733 F.3d 825, 839-40 (9th Cir. 2013). None weigh against granting relief and, if anything, weigh in support of it.

First, Plaintiff has "diligen[tly] pursu[ed]" this claim for relief. Beyond filing this motion, Plaintiff appealed this Court's dismissal, showing "diligen[t] pursu[it]" of Plaintiff's claim under *Phelps*. *See Henson*, 943 F.3d at 449 ("In *Phelps* . . . the fact that the petitioner had been diligent in advancing the legal position that was ultimately adopted by that change in the law was relevant to the equitable considerations implicated by a Rule 60(b)(6) motion."). Likewise, "a petitioner who has filed this motion within 'a reasonable time' under the Rule has diligently pursued [her] claim." *Bynoe v. Baca*, 966 F.3d 972 (9th Cir. 2020). The Ninth Circuit issued *Whiteside* on July 17, 2024, i.e., less than one month ago, and less than four months after this Court's decision in *Dior III*. The Ninth Circuit has found that "the passing of *nine* months [was] 'only a brief delay,'" and the *Phelps* court found the passing of *four* months to weigh 'strongly' in favor of granting relief." *Lawson* 2018 U.S. Dist. LEXIS 201718 at *16 (citing Phelps, 569 F.3d at 1138). So too here. This factor clearly weighs in favor of vacating the judgment.

Finally, there is no comity concern. "In fact, considerations of comity 'between the independently sovereign state and federal judiciaries' that [the Ninth Circuit] discussed in *Phelps* do not apply here at all, because this case does not involve a federal habeas petition that challenges a state conviction." *Henson*, 943 F.3d at 453. Accordingly, this factor is not at issue, and cannot weigh against finding relief under 60(b)(6).

### E. Even if this Court lacks jurisdiction to grant proper relief under Rule 60(b)(6), this Court should either make an indicative ruling on the 60(b)(6) motion, or indicate that the 60(b)(6) motion raises a substantial issue as to the decision.

Even if this Court finds it lacks jurisdiction to grant relief under Rule 60(b)(6), this Court should exercise its discretion to "make an indicative ruling" or alternatively find that Plaintiff's motion raises a "substantial issue" under Rule 62.1. Rule 62.1 provides that "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may . . . state either that it would grant the motion if the court of appeals

1    remands for that purpose or that the motion raises a substantial issue." *Silbersher v. Allergan Inc.*,

2    2024 U.S. Dist. LEXIS 83249, at *12 (N.D. Cal. May 7, 2024) (quoting Fed. R. Civ. P. 62.1(a)).

3          Given the merits of Plaintiff's Rule 60(b)(6) motion, as well as Plaintiff's pending appeal,

4    the Ninth Circuit would likely find this Court's indicative ruling helpful as a matter of judicial

5    efficiency. *See* Fed. R. Civ. P. 62.1 Advisory Committee Notes (2009). Even if this Court disagrees

6    with Plaintiff's Rule 60(b)(6) argument, however, it is indisputable that Plaintiff's motion

7    "present[s] complex issues that require extensive litigation," including whether this Court's prior

8    dismissal of Plaintiff's claims is permissible under *Whiteside*. While both options are in this

9    Court's discretion, its prior application of the same rule suggests it should issue an indicative ruling

10   here.

11         Indeed, this Court addressed a murkier version of whether to grant an indicative ruling in

12   *Lawson*, 2018 U.S. Dist. LEXIS 201718, at *19. There, this Court determined that when the

13   outcome of a 60(b)(6) motion "hinges on the application of [an intervening law] . . . the Court

14   would likely revisit the judgment, at least as to the [claims affected by the intervening law]." *Id.*

15   at *19-20. In *Lawson*, however, there was a pending question of whether this Court could apply

16   the intervening law retroactively because the potential "imposition of civil penalties under Cal.

17   Lab. Code. § 2699 et seq . . .  without fair notice that the [violating] conduct may subject

18   [Defendant] to liability" could unconstitutionally deny the defendant sufficient due process *Id*. at

19   *18-19. There is no retroactive civil penalty issue here. Indeed, the general rule under California

20   law is that "judicial decisions are given retroactive effect." *Id.* at *16 (citing *Newman v. Emerson*

21   *Radio Corp*., 48 Cal. 3d 973, 978 (1989); *Evangelatos v. Superior Court*, 44 Cal. 3d 1188, 1207

22   (1988) ("The principle that statutes operate only prospectively, while judicial decisions operate

23   retrospectively, is familiar to every law student."). Accordingly, there is no question that *Whiteside*

24   governs here, and no due process concerns that "complicate[]" this Court's indicative ruling.

25         But even if this Court determines that there *are* factors that prevent an indicative ruling,

26   this Court can and should still find that this motion raises a substantial issue. This Court "can and

27

28
     PLAINTIFF'S MOTION FOR RECONSIDERATION UNDER FED. R. CIV. P. 60(B)(6) AND 62.1(A) – CASE
     NO. 3:23-CV-00409-JSC

d[id] say that Plaintiff's motion raises a substantial issue" in *Lawson*, even considering the due process complications. *Id*. at *19. Further, "[a] statement that the motion raises substantial issues does not tie the district court to a particular ruling on the motion after remand." *Id*. at *20, *quoting In re DirecTV Early Cancellation Fee Mktg. & Sales Practices Litig.*, 810 F. Supp. 2d 1060, 1066 (C.D. Cal. 2011). Thus, to the extent this Court finds it cannot, for jurisdictional reasons, grant a motion under 60(b)(6), it still *can* and *should* issue an indicative ruling under Rule 62.1(a), or at least declare that Plaintiff's Rule 60(b)(6) motion raises a substantial issue.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant relief from its orders in *Dior II* and *Dior III* pursuant to Rule 60(b)(6), or in the alternative, issue an indicative ruling or find that Plaintiff's motion raises substantial issues under Rule 62.1(a).

DATED: August 15, 2024

**GUTRIDE SAFIER LLP**

*/s/Hayley A. Reynolds/s/*
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Hayley A. Reynolds (State Bar No. 306427)
  hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiff Alexis Slaten*